IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROSS KAWAMOTO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ASSOCIATED INDEMNITY )<br>CORPORATION, JOHN DOES 1-10, )<br>JANE DOES 1-10, DOE CORPORATIONS )<br>1-10, DOE PARTNERSHIPS 1-10, DOE )<br>NON-PROFIT ORGANIZATIONS 1-10, )<br>AND DOE GOVERNMENTAL AGENCIES )<br>1-10, )<br>)<br>Defendants. )<br>_____ ) | Civ. No. 12-00109 ACK-KSC |

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

The Court hereby DENIES WITHOUT PREJUDICE Defendant Associated Indemnity Corporation's ("AIC's") motion for partial summary judgment. Counsel for Plaintiff Ross Kawamoto clarified at the hearing on the motion that Kawamoto's tort claims are based only on AIC's conduct <u>after</u> October 19, 2009. AIC's arguments regarding the statute of limitations are therefore moot. The Court also finds that the May 11, 2011 administrative decision on Kawamoto's workers' compensation claims is not entitled to preclusive effect in this litigation. This finding is also made WITHOUT PREJUDICE.

**FACTUAL & PROCEDURAL BACKGROUND**[1]

Plaintiff Ross Kawamoto claims that he was injured on March 27, 2004 in a workers' compensation incident at the store where he then worked. (Defendant's Concise Statement of Facts ("Def. CSF") ¶ C.5.) At that time, Defendant Associated Indemnity Corporation ("AIC") was the workers' compensation carrier for the store. (Id. ¶ C.6.)

Sometime after the incident, Kawamoto attempted to claim workers' compensation for shoulder injuries he sustained during the incident. On January 23, 2006, AIC's counsel sent a letter to Kawamoto's doctor, with a copy to Kawamoto's attorney, denying Kawamoto's claim for treatment for his shoulders. (Def. CSF ¶ D.)[2]

On May 23, 2006, the Disability Compensation Division ("DCD") of Hawai'i's Department of Labor & Industrial Relations denied Kawamoto's claim for treatment for his shoulders, finding that he had not injured his shoulders in the March 27, 2004 incident. (Plaintiff's Concise Statement of Facts ("Pl. CSF") ¶ 1.) Kawamoto appealed the DCD's decision to the state Labor & Industrial Relations Appeals Board ("LIRAB"), which on July 7,

---

[1] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings

[2] It appears that Kawamoto sustained various other injuries during the incident and claimed other workers' compensation benefits, some of which he received and some of which he did not. Only the benefits related to his bilateral shoulder injuries appear to be at issue here.

2008, concluded that Kawamoto did injure his shoulders during the 2004 incident and was entitled to reasonable and necessary medical care for the shoulder injuries. (Pl. CSF ¶ 3.) AIC appealed that decision to the state Intermediate Court of Appeals which, on October 19, 2009, affirmed LIRAB's opinion. (Pl. CSF ¶ 4.)

On May 11, 2011, the DCD found that AIC[3] had not paid Kawamoto's benefits in a timely manner, and assessed a penalty against AIC of 20% of Kawamoto's claimed benefits, under Hawaii Revised Statutes § 386-92. (Pl. CSF Ex. 6 at 10.) The DCD also found:

> The employer's testimony indicates that their position on non-payment of temporary total disability benefits was unreasonable, in light of the [LIRAB] and ICA's decisions, which determined, in part, that the bilateral shoulder was a compensable component of the 3/27/2004 injury.

(Id. at 10-11; see id. at 13.) The DCD therefore awarded Kawamoto attorneys' costs for the evidentiary hearing, under Hawaii Revised Statutes § 386-93. (Id. at 14.)

---

[3] Kawamoto in his administrative actions named as defendant AIC's parent company, Fireman's Fund Insurance Co. (See Pl. CSF Ex. 6; Doc. No. 4 (AIC's Corporate Disclosure Statement).) In this action, Kawamoto's original complaint named as defendant "Fireman's Fund Insurance Co. of Hawaii." (See Doc. No. 1, Ex 2.) AIC in response repeatedly noted that the defendant was "more appropriately identified" as AIC (see Doc. Nos. 1, 4), and ultimately stipulated to allow Kawamoto to amend his complaint to substitute AIC as the defendant (see Doc. No. 12). AIC apparently does not dispute that it was the real party in interest during the administrative proceedings and indeed summarizes the history of the administrative proceedings as though it were the named defendant. (See Def. Supp. at 1-6.)

Kawamoto filed this action in state court on October 18, 2011. (See Doc. No. 1, Ex. 1.) He filed a First Amended Complaint in this Court on May 30, 2012. (Doc. No. 13 ("Compl.").) In that complaint, he asserted claims for: (1) breach of contract; (2) bad faith denial of benefits; and (3) intentional and/or negligent infliction of emotional distress. (Id. at 1-5.) He also requested punitive damages. (Id. at 6.) AIC subsequently removed the action to this Court. (See Doc. No. 1.)

On November 1, 2012, AIC moved for summary judgment on Kawamoto's second and third claims and his request for punitive damages, on the ground that these claims were brought after the applicable statute of limitations had expired. (Doc. No. 38.) AIC's motion is supported by a Concise Statement of Facts and various exhibits. (Doc. No. 39.) Kawamoto filed an opposition to the motion on February 8, 2013. (Doc. No. 52.) The Opposition was supported by a Concise Statement of Facts and various exhibits. (Doc. No. 53.) On February 15, 2013, AIC filed a Reply in support of its motion. (Doc. No. 54.)

The Court held a hearing on AIC's motion on March 4, 2013. (Doc. No. 57.) At the hearing, the Court requested supplemental briefing from the parties regarding whether the DCD's May 11, 2011 finding that AIC acted unreasonably should have preclusive effect in this action. The parties filed their supplemental briefs on March 11, 2013. (Doc. Nos. 59 ("Pl. Supp.") & 60 ("Def. Supp.").)

**LEGAL STANDARD**

A party may move for summary judgment on any claim or defense - or part of a claim or defense - under Federal Rule of Civil Procedure ("Rule") 56. Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010).

## DISCUSSION

The parties do not dispute that the two-year statute of limitations under Hawai'i Revised Statutes § 657-7 applies to the claims at issue in this motion. The Court will address the application of that statute of limitations to each claim in turn. The Court will then discuss whether the DCD's May 11, 2011 decision that AIC's "position on non-payment of temporary total disability benefits was unreasonable" (see Pl. CSF Ex. 6 at 10) operates as collateral estoppel in this action.

**I.   Statute of Limitations Arguments**

    **A.   Bad Faith Claim**

        **1.   Nature of the Claim**

The Hawai'i Supreme Court first recognized the tort of insurer bad faith in the first-party insurance context in 1996 when it decided Best Place, Inc. v. Penn America Ins. Co., 920

6

P.2d 334, 341 (Haw. 1996). Several months later, the court extended this cause of action to an employee seeking payment for workers' compensation benefits from an insurer. Hough v. Pac. Ins. Co., 927 P.2d 858, 869-70 (Haw. 1996). An insurer may face liability for "bad faith" denial of benefits and payments "if it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy." Best Place, 920 P.2d at 347 (citation omitted). The Hawai'i Supreme Court has noted, however, that conduct based on a reasonable interpretation of the insurance contract does not constitute bad faith. Id. at 347. An erroneous decision not to pay a claim for benefits does not by itself justify an award of compensatory damages. Id.

### 2.   Accrual of Kawamoto's Claim

AIC's motion was premised on the argument that Kawamoto's bad faith claim accrued, and the statute of limitations began to run, on January 23, 2006, when AIC first sent a letter denying Kawamoto's request for treatment for his shoulder injuries. (See Def. CSF Ex. D.)[4/] Kawamoto's Complaint did not give the date(s) of the benefit denials or delays upon which Kawamoto's claims are based. (See Compl. ¶¶ 10, 11, 15.) Kawamoto's counsel clarified at the hearing on the motion, however, that Kawamoto's claim is based on AIC's denials or

---

[4/] Kawamoto raises various evidentiary objections to the letter. Given, however, that his claim for shoulder treatment was adjudicated by the DCD on May 23, 2006 (Pl. CSF Ex. 1), he cannot dispute that at least as of May 23, 2006 he knew that AIC had denied the claim.

delays of benefits <u>after</u> the final appellate opinion on the administrative decision was issued on October 19, 2009. (<u>See</u> Pl. CSF ¶ 5.) These alleged actions clearly fall within the two-year statute of limitations.[5/]

**B.   Emotional Distress Claims**

Kawamoto's claims for negligent and intentional infliction of emotional distress are also governed by the two-year statute of limitations in Hawai'i Revised Statutes § 657-7. <u>Caraang v. PNC Mortg.</u>, 795 F. Supp. 2d 1098, 1121 (D. Haw. 2011).

---

[5/] In light of counsel's clarification, the Court need not rule on the purported conflict between this Court's determination in <u>Taylor v. Standard Insurance Co.</u>, 28 F. Supp. 2d 488 (D. Haw. 1997) and the Hawai'i Intermediate Court of Appeals' <u>dicta</u> in <u>Jou v. National Interstate Insurance Co.</u>, 157 P.3d 561, 568 n.4 (Haw. Ct. App. 2007). The Court notes, however, that it stands by its determination in <u>Taylor</u>. <u>Taylor</u> and <u>Jou</u> agree (1) that a bad faith claim, unlike the underlying workers' compensation claim, is not under the exclusive original jurisdiction of the DCD, but (2) that whether the claimant was entitled to the disputed benefit is a "predicate issue" that must be decided by the DCD before the bad faith claim can be adjudicated. <u>Taylor</u>, 28 F. Supp. 2d at 591-92; <u>Jou</u>, 157 P.3d at 567. Given these two premises, this Court held that a plaintiff's bad faith claim would not accrue until he won an administrative decision that he was entitled to the underlying benefit. <u>Taylor</u>, 28 F. Supp. 2d at 592. The <u>Jou</u> court, on the other hand, suggested in <u>dicta</u> that a trial court should stay proceedings on the bad faith claim while the predicate issue was being decided through the administrative process. 157 P.3d at 567. Crucially, the <u>Jou</u> court never addressed when or whether the plaintiff's claim accrued; it merely assumed that it had. The <u>Jou</u> court's suggested system would require every workers' compensation claimant to file a bad faith claim in court every time he was denied any benefit, just in case the DCD later determined that he was actually entitled to that benefit. Such a system would be contrary to public policy and contrary to the Supreme Court of Hawai'i's repeated admonishment that every denial of insurance benefits is not necessarily in bad faith. <u>Hough</u>, 927 F.2d at 870 (quoting <u>Best Place</u>, 920 P.2d at 347). It would also circumvent the purpose of the Hawai'i Workers' Compensation Act. For all these reasons, the Court stands by its reasoning in <u>Taylor</u>.

The claims accrued "when the plaintiff knew or should have known of the causal connection between the defendant's action and the damage done." Id. (citation omitted). In this case, again, while Kawamoto's Complaint did not give specific dates, Kawamoto's counsel at the hearing clarified that these claims are based on AIC's wrongful denial or delay of benefits after the Intermediate Court of Appeals' ruling on October 19, 2009. (See Pl. CSF ¶ 5.) Those acts are within the two-year statute of limitations.

### C.   Request for Punitive Damages

Punitive damages is not a separate tort claim, but rather a request for relief as to the plaintiff's other claims. Since Kawamoto's tort claims survive summary judgment, his request for punitive damages also survives.

## II.  Collateral Estoppel

The Ninth Circuit has held that:

> When a state agency acts in a judicial capacity to resolve disputed issues of fact and law properly before it, and when the parties have had adequate opportunity to litigate those issues, federal courts must give the state agency's fact-finding and legal determinations the same preclusive effect to which they would be entitled in that state's courts.

Olson v. Morris, 188 F.3d 1083, 1086 (9th Cir. 1999); see Santos v. Dep't of Transp., 646 P.2d 962 (Haw. 1982); see Jacobs v. CBS Broad., Inc., 291 F.3d 1173, 1177 (9th Cir. 2002) (noting that a federal court sitting in diversity applies the collateral estoppel rules of the forum state). Here, the DCD found that AIC's "position on non-payment of temporary total disability

benefits was unreasonable." (Pl. CSF Ex. 6 at 11.) The Hawaii Supreme Court has held that "[a]n unreasonable delay in payment of benefits will warrant recovery for compensatory damages" on a bad faith claim. Best Place, 920 P.3d at 347. The Court must therefore decide whether, under Hawaii law, the DCD's finding is entitled to preclusive effect in this litigation.[6]

Hawaii's test for collateral estoppel bars relitigation of an issue where:

> (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication . . . .

Dorrance v. Lee, 976 P.2d 904, 910 (Haw. 1999).

Here, there appears to be no dispute that the last three elements of the collateral estoppel test are met. The parties apparently agree that AIC was either a party to the

---

[6] It is proper for a federal court to raise the issue of collateral estoppel sua sponte, as long as the parties are given the opportunity to address the issue before the court rules. See Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1055 n.6 (9th Cir. 2005); see, e.g., Favish v. Office of Indep. Counsel, 217 F.3d 1168, 1171 (9th Cir. 2000). Here, the Court raised the issue sua sponte at the hearing on AIC's motion to dismiss, and requested supplemental briefing from the parties on the issue. (See Doc. No. 57.) Counsel agreed at the hearing that seven days would be sufficient to prepare briefing on the issue, and both parties filed timely supplemental briefs (see Doc. Nos. 59 & 60).

administrative proceedings or in privity with that party.[7] They do not dispute that the DCD's May 11, 2011 decision as to AIC's unreasonableness was "on the merits" and "final." See Malahoff v. Saito, 140 P.3d 401, 427 (Haw. 2006) ("[W]here a party does not appeal a final administrative decision, that decision becomes final and res judicata." (citation omitted)).[8] And there appears to be no question that the DCD's finding of unreasonableness was "essential" to its award of costs under Hawai'i Revised Statutes § 386-93, which allows for such an award only if the adjudicating body finds that the workers' compensation proceedings "have been brought, prosecuted, or defended without reasonable ground." Haw. Rev. Stat. § 386-93 (emphasis added). The parties dispute, however, whether the issue decided by the DCD was "identical" to the one before the Court.

On its face, the issue is not identical. The Supreme Court of Hawai'i noted when establishing the bad faith cause of action that "[a]n unreasonable delay in payment of benefits will warrant recovery for compensatory damages" under its test. Best Place, 920 P.2d at 347. The DCD, on the other hand, awarded costs

---

[7] As noted above, AIC summarizes the administrative proceedings as though it were the named defendant (see Def. Supp. at 1-6) even though the named defendant was Fireman's Fund Insurance Co. (see Pl. CSF Ex. 6). Regardless, AIC is a wholly-owned subsidiary of Fireman's Fund Insurance Co. (See Doc. No. 4 (Def.'s Corporate Disclosure Statement).)

[8] Counsel at the motion hearing noted that Kawamoto has appealed the May 2011 decision as to other issues. AIC has not, however, appealed the finding of unreasonableness and award of attorneys' costs or the award of 20% of Kawamoto's delayed benefits under Hawai'i Revised Statutes § 386-92.

11

under a statute which allows such awards where the proceedings "have been . . . defended without reasonable ground." Haw. Rev. Stat. § 386-93. In other words, the DCD found that AIC's defense was unreasonable, not its delay in payment of benefits.

The relationship under Hawaii state law between a bad faith tort claim and the reasonableness standard of section 386-93 is far from clear. Although section 386-93 has been in existence (with minor changes) since 1915, no case has addressed how to interpret the phrase "without reasonable ground," and the legislative history of the provision gives no guidance. Indeed, in 2012 debates on a bill to reword the section to clarify that an award may include attorneys' fees,[9] several state legislators worried that the phrase "without reasonable ground" was too vague. Rep. Ching stated "unreasonable is a vague and arbitrary standard. No two people may agree on what constitutes a[n] 'unreasonable' action." 26 H. Journal 814 (Haw. 2012). Rep. Souki noted "'unreasonable' can be identified in many different ways." Id. Rep. Marumoto noted "this is a problem because the word unreasonable can be determined [sic]. It could be arbitrary. It could be capricious, and no two people will consider it the same way." Id. at 815. The section nonetheless

---

[9] The bill was introduced to abrogate the Intermediate Court of Appeals' unpublished disposition in Kelly v. Metal-Weld Specialties, Inc., 192 P.3d 613 (Haw. Ct. App. 2008), which found that awards under section 386-93 could not include attorneys' fees. See 26 H. Journal 814 (Haw. 2012). The Kelly opinion did not illuminate what constitutes "reasonableness" under section 386-93.

12

passed without further explanation or interpretation of its standard.

      Although no case discusses the relationship between the bad faith tort claim and section 386-93, the Hawaii Supreme Court has addressed the relationship between the bad faith tort claim and section 386-92 (which awards twenty percent of the delayed benefits where an insurer has delayed or failed to pay benefits for more than a set period of time).[10] See Hough, 927 P.2d at 867-69. In Hough, the state supreme court noted that the DCD has no jurisdiction over bad faith tort claims. Id. at 867. The court found "no indication . . . that the administrative penalties [under section 386-92] were intended by the legislature to abrogate common law rights to bring an action in tort." Id. at 868. It quoted approvingly the Supreme Court of Nevada's observation that "although administrative fines may have some deterrent effect . . . , they do not purport to address the plight of the injured worker who may suffer great deprivation as a result of the tortious denial or delay of his or her benefits." Id. (quoting Falline v. GNLV Corp., 823 P.2d 888, 894 (Nev. 1991)). Finally, the Hawaii Supreme Court noted that "the arbitrary amount of the penalty . . . does not bear any particularized relationship to the injury suffered as a result of the insurer's acts." Hough, 927 P.2d at 868-69. The Hough court concluded that the statutes authorizing the administrative

---

[10] The DCD also granted an award to Kawamoto under section 386-92. (See Pl. CSF Ex. 6 at 10.)

13

penalties did not preclude an employee from pursuing his bad faith tort claim in court. Id. at 869.

   The Court finds Hough's reasoning applicable here. Applying collateral estoppel in cases such as Kawamoto's would effectively cause bad faith claims to be litigated in full before the DCD, since the parties could expect the DCD's decision to preclude either the prosecution or the defense of the bad faith tort claim in court. That result is not consonant with either Hawaii's workers' compensation scheme or the state supreme court's holding that the courts, not the DCD, have jurisdiction over bad faith claims. See Hough, 927 P.2d at 867.

   The Court notes three other factors which weigh against applying collateral estoppel here. First, the DCD's May 2011 finding was limited to AIC's position as to particular temporary total disability benefits. (See Pl. CSF Ex. 6 at 14.) It is not at all clear that Kawamoto's claims before this Court are based on AIC's non-payment or delay only of those temporary total disability benefits. Neither the Complaint nor the parties' briefs (either on summary judgment or on the collateral estoppel issue) are clear on this point, and the Court cannot discern it from the various administrative decisions submitted as exhibits, which deal with many different benefits claimed by Kawamoto.

   Second, the Court notes that any award of punitive damages to Kawamoto must be proved by clear and convincing evidence. Best Place, 920 P.3d at 348. The DCD's decision was reached under a lower evidentiary standard. Judicial economy

would not be served by applying collateral estoppel here, since the alleged wrongfulness of AIC's conduct will need to be litigated regardless, in order to determine whether Kawamoto is entitled to punitive damages.

Third, the Court notes that the Hawaii Supreme Court has suggested that collateral estoppel may not apply where "the party sought to be precluded . . . did not have an adequate . . . incentive to obtain full and fair adjudication in the initial action." Kaho'ohanohano v. Dep't of Human Servs., 178 P.3d 538, 579-81 (Haw. 2008); cf. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330 (1979) ("If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable."). In this case, the amount in dispute before the DCD was far smaller than the amount at issue before this Court, and AIC did not have notice that the DCD's finding might later preclude AIC's defense before this Court, since the issue has never been addressed before.

In sum, the Court finds that the DCD's determination is not entitled to preclusive effect in this litigation. The Court makes this finding without prejudice.

## **CONCLUSION**

For the foregoing reasons, the Court DENIES AIC's motion for partial summary judgment. Kawamoto's tort claims are based on AIC's denials or delays of benefit payments after October 19, 2009, and therefore are not barred by the applicable

statute of limitations. The Court also finds that the DCD's May 11, 2011 finding is not entitled to preclusive effect in this litigation. These findings are made WITHOUT PREJUDICE.

    IT IS SO ORDERED.

    DATED: Honolulu, Hawai'i, March 21, 2013



_____
Alan C. Kay
Sr. United States District Judge

<u>Kawamoto v. Associated Indem. Corp.</u>, Civ. No. 12-0109 ACK-KSC, Order Denying Motion for Partial Summary Judgment